# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed October 3, 1928.

ELEANOR GRAFFLIN
VS.
WILLIAM GRAUEL, HARRY DREYER AND CHARLES MINNIGERODE.

*W. Irving Cross* for plaintiff.

*Walter V. Harrison* and *Robert D. Bartlett* for defendants.

FRANK, J.—

This action for damages for personal injuries was tried before the Court without a jury. Owing to a situation that has arisen herein, and which has in my experience also arisen in other cases, I have been impelled to put my conclusions, and my reasons therefor, in writing.

The plaintiff was a guest of the defendant, Charles Minnigerode, in his

automobile, a coupe. Mr. Minnigerode was driving the car and Mrs. Minnigerode and the plaintiff were seated on the rear seat. While driving east on University parkway, the car in which plaintiff was riding ran into a two-ton Mack truck belonging to the defendant, Grauel, and driven by his chauffeur, the defendant, Dreyer, coming north on Guilford avenue. This occurred after dark.

The plaintiff's witnesses consisted of her attending physician, Mr. and Mrs. Minnigerode and herself. The plaintiff was rendered unconscious immediately upon the collision, her head having struck the windshield, and she was therefore, unable to tell anything about the accident, except that she stated that Mr. Minnigerode had been driving carefully.

Mr. and Mrs. Minnigerode were the only witnesses she produced, who testified as to the circumstances of the collision; both testified that Mr. Minnigerode was driving carefully, but that the truck, although it had the right of way, was not properly lighted and that, therefore, it was not seen until the headlights of Mr. Minnigerode's car showed the radiator of the truck immediately in front of them. It was then, they testified, too late to avoid the accident.

The plaintiff thereupon closed her case and the defendant, Minnigerode, offered a prayer that there was no legally sufficient evidence to hold him and asked for a directed verdict in his favor. The plaintiff consented to the granting of this prayer. Nevertheless, at that time I refused to grant it because, while all of the verbal testimony had the effect of showing that Minnigerode was driving carefully, the physical facts led me to believe that he was not free from fault.

Counsel for Mr. Minnigerode offered no testimony and took no part in the further trial of the case, although he remained at the trial table until the conclusion of the case, including argument by counsel for the plaintiff and for the other two defendants.

The record shows that the witness, Mrs. Minnigerode, had been the plaintiff in an action, growing out of the same accident, against the defendants, Grauel and Dreyer, in which she was represented by the same counsel who appeared for the plaintiff in this case,

and that the result of that case had been a verdict and judgment in favor of the said defendants.

I feared, should I grant the defendant, Minnigerode's prayer, that there might be a result similar to the results I had seen in other cases where there were two or more defendants charged with responsibility for the same accident. If I should then have relieved Minnigerode from liability, the remaining defendants would put on their case and endeavor to show that they were free from liability and might succeed in doing so.

The undisputed evidence before me in this case demonstrated that the plaintiff was entitled to recover as against some one or more of the defendants. The accident was not an inevitable one and had been caused by the negligence of one or all of the defendants. The plaintiff was free from personal fault and any negligence on the part of Minnigerode could not be imputed to her. It has sometimes happened in similar trials that a plaintiff, clearly entitled to recover, has been denied recovery because at the close of his case one of the defendants has been exonerated, and in the further trial of the case against the other defendants, a verdict for them has been rendered. Such a result could readily be obviated by the plaintiff placing all of the defendants on the witness stand in his case. Each of them would seek to place the fault upon the other, and the effect of their testimony would likely be that a sufficient prima facie case would be made out against some and possibly all of the defendants.

If that procedure had been followed in this case, a prima facie case would have been made out against Minnigerode, just as by the testimony of Mr. and Mrs. Minnigerode a prima facia case was made out against the other two defendants.

The plaintiff did not choose, for reasons satisfactory to herself, to conduct her case in this manner, but consented to the exoneration of Minnigerode. As a consequence I find myself in this position: The defendant, Minnigerode, having submitted his case on the plaintiff's testimony and having offered no testimony in his own behalf, I am compelled to find, upon reviewing the plaintiff's testimony, and giving effect to her consent to a verdict in his favor, that

no case has been made out against him, and that my verdict must be for him.

At the conclusion of the whole case, I am satisfied, on all the testimony, that the case has not been made out against the other two defendants, and that, on the weight of the evidence, they have been guilty of no negligence, and my verdict must be for them.

If I were at liberty to consider all the testimony as against the defendant, Minnigerode, I should find a verdict for the plaintiff as against him. For the reasons assigned, I do not find myself able to do this.

My verdict, therefore, must be for all of the defendants.

So manifest an injustice is, however, brought about by this result that I shall, of my own motion, immediately grant the plaintiff a new trial. 29 Cyc. 921, IV. A. In this second trial, if she is so advised, she may, by putting all of the defendants on the stand, as I have above suggested, make out a prima facie case against some or all of them, and permit the Court to find a verdict for her as against one or the other of the defendants on all the evidence in this case.